Marian Henderson Macomber v. Commissioner.
Macomber v. Commissioner
Docket No. 28266.
United States Tax Court
1951 Tax Ct. Memo LEXIS 208; 10 T.C.M. (CCH) 539; T.C.M. (RIA) 51167; June 6, 1951
William M. Brinton, Esq., for the petitioner. Charles W. Nyquist, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined that Leroy Macomber, deceased, made a gift of real property to the petitioner in 1944, and that there is liability for gift tax in 1944 with respect to the gift in the amount of $12,275.49 which was not paid by Leroy Macomber or his estate, and that the petitioner is liable for the gift tax deficiency as donee and as transferee of the property under sections 1009 and 1025 of the Code. The petitioner contends that no gift of the property in question was made to her in 1944. Findings of Fact We find as facts the facts which have been stipulated. The petitioner is the widow of Leroy Macomber, hereinafter referred to as Macomber, *209 who died on December 4, 1944, in San Francisco, California. At the time of his death, he and the petitioner were separated, and the petitioner resided in Pasadena, California. The petitioner was appointed the executrix of Macomber's estate. The administration of the estate was closed in February of 1949. The petitioner and Macomber were married in 1921. They lived in California prior to 1934 when they moved to Seattle, Washington. Macomber continued to reside in Seattle in 1944. The petitioner returned to California in 1940. During the administration of Macomber's estate, the petitioner, as executrix of the estate, gave a limited power of attorney to several lawyers, one of whom, Riese, was a Seattle lawyer, who is referred to hereinafter. At some time prior to 1934, property was acquired in Contra Costa County, California, near the town of Danville for a home site, which is called hereinafter the Danville property. Title to the property was taken in the name of Macomber. The petitioner and her husband lived on the property before they moved to Seattle. After they moved away from the property, it was rented. On or about February 24, 1934, Macomber executed a "Gift Deed" conveying *210 the Danville property to the petitioner. He acknowledged execution of the deed before a notary public of King County, State of Washington, on February 24, 1934. Macomber delivered the deed to the petitioner, and she placed it with her personal belongings. Later, she placed it in a safety deposit box. When she returned to California to live, she took the deed with her, and it was in her possession in 1943. However, the deed was not recorded prior to 1943. The petitioner received the rents from the Danville property, which she deposited in her own bank account and from which she paid the taxes on the property. During the period from 1940 through 1943, the domestic relations of the petitioner and Macomber were strained, and in the early part of 1943 there were discussions and negotiations about a separation of the parties and the making of a property settlement among the petitioner and her lawyer and Macomber and his lawyer. The petitioner's attorney learned that the 1934 deed conveying the Danville property had not been recorded, and he had it recorded and made the following notation thereon: "When recorded mail to Mrs. Marian H. Macomber, 1500 San Pasqual St., Pasadena 4, California. *211 " The deed was recorded on December 18, 1943, in the Official Records of Contra Costa County, Vol. 767, p. 79. As a result of the negotiations, an agreement of "separation and financial settlement" was drafted. The petitioner's lawyer desired that no question should arise about community property interests in the Danville property, and he requested that a paragraph should be included in the agreement to the effect that Macomber would give the petitioner a quitclaim deed to the Danville property which would be in the nature of a release or would serve to dispose of questions which might arise about the interests in the property. The separation agreement was executed by the petitioner and Macomber on May 18, 1944. The agreement contains the following paragraph: "The party of the second part [Macomber] will quitclaim to the party of the first part [Marian Macomber] all those pieces or parcels of land located in the County of Contra Costa, State of California, and which are particularly described in a gift deed from the party of the second part to the party of the first part, dated February 24, 1934, and recorded on December 18, 1943, in Volume 767, Page 79, Official Records of *212 Contra Costa County." Macomber never gave the petitioner the quitclaim deed to the Danville property which he agreed to give to her in the separation agreement. Macomber never filed a gift tax return for the gift of the Danville property, and no gift tax on that gift was ever paid. After the administration of the estate of Leroy Macomber, deceased, which ended in February of 1949, the Seattle lawyer, Riese, executed and filed with a collector of internal revenue, on May 4, 1949, Forms 709 and 710, gift tax return and donee's information return of gifts, for the year 1944 for the estate of Leroy Macomber, in which he reported a gift on May 18, 1944, which is the date on which the separation and financial settlement agreement was executed, of the Danville property by Macomber to the petitioner, and in which he stated that the value of the property on May 18, 1944, was $60,000. Riese swore to and signed the gift tax return "Estate of Leroy Alexander Macomber, deceased, by John N. Riese, attorney in fact," and he signed the petitioner's name to the donee's information return "by John N. Riese, Agent with power of atty." The petitioner, on December 6, 1948, had executed a power *213 of attorney, as executrix of the estate of her deceased husband, in which she appointed four lawyers, including Riese, as attorneys for her as executrix of the estate, but the powers which she gave to the attorneys named were limited powers "to sign, make, execute, file and prosecute before the Bureau of Internal Revenue, United States Treasury Department, all protests and claims for refund, abatement or credit or any and all excessive taxes, interest and penalties, which have heretofore been or may hereafter be unlawfully or illegally assessed against or collected from me, or said estate, by the said Treasury Department for gift taxes, interest or penalties, and to institute such proceedings at law or in equity as they deem necessary and proper for my relief; to do and perform any and all such other lawful acts as shall be deemed necessary and proper to protect my interests; * * *" However, the petitioner did not, apart from any understanding which Riese may have had under his interpretation of the power of attorney, request or authorize Riese to execute and file the gift tax and donee's information returns, and she did not sign either of the returns. In the notice of deficiency *214 dated February 23, 1950, the respondent stated the reason for his determination as follows: "The records of this office indicate that on or about May 18, 1944, LeRoy Alexander Macomber, now deceased, transferred property to you as a gift and that the gift tax liability therefor has not been discharged. The above-mentioned amount shows your liability as a transferee of the property received by you." Ultimate Findings of Fact: Leroy Macomber gave the Danville property to the petitioner in 1934. He did not give the property to the petitioner on May 18, 1944, under the separation and financial agreement which was executed on that date, or at any other time in 1944, or under a quitclaim deed in 1944. Opinion The question is whether Leroy Macomber, deceased, made a gift of the Danville property to the petitioner during the year 1944. The respondent contends that there was a gift of the Danville property from Macomber in 1944. He relies chiefly upon the gift tax returns for 1944 which were filed by Riese in 1949, and the clause in the separation agreement of May 18, 1944, which contains the paragraph in which Macomber agreed to give a quitclaim deed of the Danville property to the *215 petitioner. The petitioner contends that Macomber executed and gave her a gift deed conveying the Danville property to her in 1934. She contends, further, that she did not authorize Riese to file the gift tax returns in May of 1949 for the estate of Macomber or for herself, individually, and that he acted beyond the powers given to him under the power of attorney of December 6, 1948, so that no liability attaches to her for the unauthorized acts of an agent, to whatever extent his acts relate to the issue in this proceeding. The respondent has not made any determination of a deficiency in gift tax liability of Leroy Macomber, deceased, for any year prior to 1944. He rests his claim against the petitioner for a gift tax deficiency with respect to the transfer of the Danville property to her by Macomber solely upon his determination that the property was transferred to her in 1944 as a gift. Section 1009 of the Code provides that a tax imposed under the statute "shall be a lien upon all gifts made during the calendar year, for ten years from the time the gifts are made." Section 1009 also makes the donee of the gift personally liable for unpaid gift tax to the extent of the value *216 of the gift. However, the respondent makes no contention in this proceeding that his determination of transferee liability against the petitioner is made under the provision that there is a lien on the gift property for ten years from the date of the gift; i.e., since he did not make a determination of gift tax liability of Macomber for the year 1934 or for any other year prior to 1944 with respect to the gift, he is not invoking the ten-year lien provision. Furthermore, he did not make a determination of gift tax transferee liability against the petitioner within ten years after 1934. The notice of deficiency in transferee tax liability, which gives rise to this proceeding, was mailed on February 23, 1950. Accordingly, unless it is found as a fact that Macomber conveyed the property in question to the petitioner by gift in 1944, the respondent must fail. The evidence establishes that the property in question was not conveyed by gift from Macomber to the petitioner in 1944, and that a gift deed to the property was executed by Macomber and was delivered to the petitioner in 1934. We have found those facts to be facts. The deed was not recorded in 1934, but as between the parties *217 it was a valid deed. Section 1217, Civil Code of California. Furthermore, the evidence before us that the petitioner had possession of the deed in 1934 is not contradicted or impeached, and we must, therefore, recognize the legal presumption of manual delivery. Section 1055, Civil Code of California; ; . Finally, the evidence shows that the deed was recorded in 1943, and the notation which is typed on the deed that it was to be mailed to the petitioner after the recordation gives support to the petitioner's testimony that she had possession of the deed before 1944, and that evidence is not contradicted. The only circumstances upon which the respondent relies in support of his determination that the gift was made in 1944 are the paragraph in the separation agreement of May 18, 1944, which has been quoted in the findings of fact, and the gift tax returns for 1944, which were executed and filed by Riese. We must conclude, in the light of all of the evidence before us, that the clause in question whereby Macomber agreed to give the petitioner a quitclaim deed to the property meant no more than that *218 he agreed to give her a release. It has been observed that "A quitclaim deed is closely related to a simple release," ; 9 Cal. Jur. 99, 204, 205, although, also, it "has come to be recognized as a distinct form of conveyance, and operates like any other to the extent of transferring whatever title or interest the grantor has, but none other." The evidence does not show that Macomber executed and gave the petitioner a quitclaim deed to the property. If he had done so, it would not have conveyed title to the property to her, because Macomber did not own the title to the property in 1944. The executing and filing of gift tax returns for 1944 by Riese in 1949 are not explained. He did not testify in this proceeding. The petitioner, on the other hand, has testified that she did not give information to Riese about the 1934 deed and that he acted, in filing returns in 1949, without her personal authorization. Since Riese used the date May 18, 1944, in each of the returns which he executed and filed in 1949, it is a reasonable assumption that he had knowledge of the separation agreement of May 18, 1944, and *219 that he acted upon his assumption that the clause therein relating to a quitclaim deed of the Danville property provided a basis for his action in executing and filing the gift tax returns in 1949. Consideration of all of the evidence compels us to conclude that the above factors on which the respondent relies do not support a finding of fact that Macomber conveyed the Danville property by gift to petitioner in 1944, and that there is no evidence to support such finding. The petitioner's evidence supports the ultimate findings of fact which we have made. Under those findings, the respondent's determination is reversed. It is recognized that in this proceeding there are some circumstances which give rise to considerable doubt. But we do not find in the record before us cause for not believing the unimpeached and uncontradicted testimony of the witnesses for the petitioner, including her own testimony. Decision will be entered for the petitioner.